**Silence Law Group**
20235 N. Cave Creek Rd. Ste 104 # 460
Phoenix, AZ 85024

**Jeffrey Silence** (029143)
Direct Dial: (602) 932-8358
Email: jeff@silencelaw.com

**Jesse Ritchey** (034650)
Direct Dial: (602) 932-8747
Email: jesse@silencelaw.com

**David Nowakowski**(035068)
Direct Dial: (602) 932-8747
Email: david@silencelaw.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Blake Lynch,

     Plaintiff,

v.

Joseph Shrem, David Moradi,
Select Home Warranty, LLC,

    Defendants.

No. 2:25-cv-04481-DJH

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO VACATE CLERK'S ENTRIES OF DEFAULT AND TO DISMISS**

Before addressing Plaintiff's procedural arguments, the Court should consider the threshold question: does it have jurisdiction over this case? It does not. Plaintiff's own sworn Complaint describes a dispute over a denied home warranty claim for a residential air conditioning unit. The Magistrate Judge's Report and Recommendation notes that Plaintiff's actual damages total only *$7,820*, far below the jurisdictional threshold. (Doc. 17.) That is the real amount at stake. Plaintiff's attempt to reach the $75,000 diversity threshold depends entirely on a self-created "Notarial Certificate of Dishonor" to which he assigned an arbitrary value of $100,000 and by seeking punitive damages that are not available in this case pursuant to Arizona law. As explained below, that document has no

legal force. Without it, this case does not belong in federal court, and no argument about service, delay, or default changes that.

Plaintiff's Response also makes three procedural arguments: (1) that service of process was proper; (2) that Defendants failed to respond for two months and therefore the default should stand; and (3) that his "Notarial Certificate of Dishonor" theory entitles him to $300,000 in damages. Each argument fails as a matter of law.

On service, Plaintiff concedes his initial attempt by mail was defective, then claims he hired a process server. But his own declaration states that "the subject corporate address of Defendants is a mailbox" (Resp. ¶ 4), and he never states that personal service was actually completed on anyone. Thus, proper service has never been executed.

On delay, Plaintiff ignores that the Magistrate Judge issued a Report and Recommendation identifying the same deficiencies raised in Defendants' Motion, and that Plaintiff himself moved for default just 21 days after his claimed service date, before any reasonable response period had run. Thus, Defendants' opportunity to respond was cut short by Plaintiff's haste to obtain what he clearly hoped would be an "automatic" award.

On damages, Plaintiff now cites an approximately 170-year-old Tennessee statute and a case from 1855, both of which apply to negotiable instruments like checks and bills of exchange, not home warranty contracts. Plaintiff's "Notarial Certificate of Dishonor" is an arbitrary, self-serving, and illusory artifact with no legal applicability.

The Clerk has already flagged Plaintiff's filing as improper in form under LRCivP 5.4. Plaintiff served this Response by first-class mail to a New Jersey address rather than on counsel of record. The filing does not change the analysis set forth in Defendants' Motion or in the Magistrate Judge's Report and Recommendation.

## I. PLAINTIFF'S NOTARIAL CERTIFICATE OF DISHONOR THEORY IS LEGALLY BASELESS

Plaintiff's damages theory requires some explanation, because it is unusual. Plaintiff's claim arises from a denied home warranty claim. Rather than suing for breach

SILENCE LAW GROUP

of contract in the ordinary way, Plaintiff took his dispute to a notary and had the notary prepare a document called a "Notarial Certificate of Dishonor." Plaintiff assigned this document a face value of $100,000. He then mailed it to Defendants and, when Defendants did not respond, claimed that their silence entitled him to treble damages under A.R.S. § 44-1797.16.

The problem is that this process does not apply to home warranty contracts. A "certificate of dishonor" is a formal certification, issued by a notary, that a negotiable instrument has been presented for payment and refused. *See* A.R.S. § 47-3505(B) (Arizona's adoption of UCC Article 3). Negotiable instruments are specific financial documents: checks, promissory notes, drafts, and bills of exchange. *See* A.R.S. § 47-3104. Negotiable instruments are not warranty contracts, invoices, or demand letters. *Id.* A home warranty company's refusal to pay a claim is a potential breach of contract, which is governed by Arizona's common law. It is not the "dishonor" of a negotiable instrument.

Plaintiff appears to recognize this vulnerability, and attempts to reframe his theory. He argues that he is not claiming the warranty itself is a negotiable instrument, but rather that the notarial process independently created an obligation that Defendants were required to answer. He cites *Watson v. Tarpley*, 59 U.S. 517 (1855), for the proposition that notarial protests carry legal significance. But *Watson* involved a bill of exchange, which is a negotiable instrument. The case reinforces the point that notarial protests are creatures of commercial paper law, not tools for converting an everyday contract disputes into six-figure claims.

Plaintiff cannot take a warranty claim denial, run it through a notary's office, assign it an arbitrary dollar value, and then sue on the certificate as though it were a dishonored check. There is no authority supporting this theory, and the authority Plaintiff himself cites contradicts it.

## II.    THIS COURT LACKS SUBJECT MATTER JURISDICTION

Plaintiff demands $300,000, consisting of $100,000 in "actual and punitive damages" and $200,000 for "Defendants' dishonor of a debt." This demand fails to

SILENCE LAW GROUP

establish subject matter jurisdiction under 28 U.S.C. § 1332 for multiple independent reasons.

First, Plaintiff bears the burden of establishing that the amount in controversy exceeds $75,000. Under *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938), a plaintiff's good-faith allegation controls unless it appears to a legal certainty that the claim is for less than the jurisdictional threshold. "When the jurisdictional amount is challenged, the party invoking the jurisdiction of the federal court has the burden of proving that it does NOT appear to a legal certainty that the claim is actually for less than the requisite jurisdictional amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996). That standard does not require courts to accept allegations that are facially inconsistent with the amount claimed. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *McGuire v. Beckmann*, *2 (E.D. Cal. Sep. 6, 2019) ("the district court may review any evidence necessary, including affidavits and testimony, in order to determine whether subject matter jurisdiction exists. . . If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action."). The invoking party must prove the amount in controversy by a preponderance of the evidence. *Sanchez*, 102 F.3d at 403–04. Plaintiff has not carried this burden.

Second, Plaintiff's entire path above $75,000 depends on the Notarial Certificate of Dishonor discussed above. As established, this document has no legal force. It is a piece of paper Plaintiff drafted himself, assigned an arbitrary face value of $100,000, and had notarized. A party cannot manufacture federal jurisdiction by creating a document, writing a number on it, and then suing on that number. *See Wells Fargo Bank NA v. Prime1 Constr. LLC*, No. CV-24-02337-PHX-DJH, 2025 WL 1685860, *4 (D. Ariz. Jun. 16, 2025) ("A party cannot create diversity jurisdiction through improper or collusive assignment. . . Improper or collusive assignment means an attempt to create jurisdiction by colorable assignment without substance.") (quotation omitted). If this were permitted, any plaintiff could establish diversity jurisdiction in any contract dispute simply by inflating a self-

SILENCE LAW GROUP

authored certificate to whatever amount they wished. The good-faith requirement of *St. Paul Mercury* exists precisely to prevent this.

Courts have rejected precisely this kind of jurisdictional inflation in analogous circumstances. In *Rasidescu v. Midland Credit Management, Inc.*, a pro se plaintiff sought over $50 million in damages arising from a dispute over an alleged credit card debt of approximately $10,600, asserting fraud, tort damages, and punitive damages to reach the jurisdictional threshold. 435 F.Supp.2d 1090, 1093 (S.D. Cal. 2006). The court dismissed for lack of subject matter jurisdiction, finding to a legal certainty that the plaintiff could not recover the amounts claimed. *Id.* at 1098. It explained that the legal certainty standard is satisfied, among other circumstances, "when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Id.* at 1096 (quoting *Pachinger v. MGM Grand Hotel–Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986)). The court further found that the plaintiff's punitive damages claim, untethered from any allegation of willful and malicious conduct, "appear[ed] to have been made in bad faith" for the purpose of manufacturing jurisdiction. *Id.* at 1098. The parallel to the present case is direct because Plaintiff's $300,000 demand is built on a self-created instrument with no legal force, actual damages of only $7,820, and a punitive damages theory that Arizona law forecloses and which is constitutionally barred even if they were permitted. .

Third, Plaintiff's own Complaint establishes the true value of this dispute. In his sworn filing, Plaintiff states that he "was forced to pay for third-party A/C technicians and for a new air conditioner out-of-pocket." (Compl. at 4.) The Magistrate Judge's Report and Recommendation notes that "Plaintiff asserts actual damages in the amount of $7,820." (Doc. 17.) That is the real dollar amount at stake in this case, by Plaintiff's own account, and it is nowhere near the $75,000 threshold.

Fourth, Plaintiff's remaining theories for exceeding the threshold independently fail. Punitive damages are unavailable for breach of contract under Arizona law. *Rawlings v. Apodaca*, 151 Ariz. 149, 162 (1986).

SILENCE LAW GROUP

Even where a plaintiff attempts to recast a contract dispute as a general tort in order to reach punitive damages, Arizona courts require a showing that the defendant's conduct was guided by an evil hand guided evil mind, that is, that the defendant acted with the intent to injure, or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others. *Rawlings*, 151 Ariz. at 162; *Gurule v. Illinois Mutual Life & Casualty Co.*, 152 Ariz. 600, 602 (1987). Tort claims arising from contracts have an even higher standard, requiring gross fraud "or where extraordinary facts are present." *Hunter Cont. Co. v. Sanner Cont. Co.*, 16 Ariz.App. 239, 245–56 (1972); *Dawson v. Withycombe*, 216 Ariz. 84, 112, ¶ 96 (App. 2007). Plaintiff has alleged nothing entitling him to punitive damages. His Complaint describes a denied warranty claim for a residential air conditioning unit. That is a breach of contract allegation, and it does not become a punitive damages case simply because Plaintiff labels it fraud.

The reasoning of *Rasidescu* is directly applicable here as well. In that case, the court found that a pro se plaintiff's punitive damages claim, asserted without any supporting allegations of actual damages or willful, malicious, or intentional conduct by the defendant was insufficient for the purpose of proving federal jurisdiction. 435 F.Supp.2d at 1098. The court further noted that because the underlying conduct, at most, "may have been improper," it fell far short of the wanton and malicious conduct necessary to support a punitive damages award. *Id.* The same conclusion follows here. Plaintiff's assertion of hundreds of thousands in punitive-adjacent damages for "Defendants' dishonor of a debt" is untethered from any factual allegation of malicious or intentional conduct, rests entirely on the legally baseless Notarial Certificate of Dishonor, and bears no reasonable relationship to the actual dispute, a denied warranty claim worth less than $8,000. A punitive damages demand of that magnitude, on these facts, cannot be a good-faith attempt to recover; it is an attempt to manufacture jurisdiction. *See Srour v. Barnes*, 670 F.Supp. 18, 20–21 (D.D.C. 1987) (punitive damages claim that appears made in bad faith to reach jurisdictional threshold does not count toward amount in controversy).

SILENCE LAW GROUP

Plaintiff's fraud allegation, raised for the first time in this Response and never pled in the Complaint, independently fails for the same reasons. It has not been alleged with the particularity required by Federal Rule of Civil Procedure 9(b), which demands that a plaintiff state with precision the time, place, and nature of the alleged misrepresentations and explain why each statement was false and misleading. *Rasidescu*, 435 F.Supp.2d at 1099–1100. A response brief is not the proper vehicle for adding new causes of action, and a conclusory fraud label added in opposition cannot cure the deficiencies of the underlying pleading.

Even assuming, contrary to fact, that punitive damages were legally available, Plaintiff's demanded award of $200,000 in punitive damages on actual damages of $7,820 could not survive constitutional scrutiny. The Supreme Court has established that punitive damages must bear a reasonable relationship to the harm actually suffered by the plaintiff, and that in practice few awards exceeding a single-digit ratio between punitive and compensatory damages will satisfy due process. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). The Court in State Farm identified reprehensibility of the defendant's conduct as the most important factor in assessing the reasonableness of a punitive award, and instructed courts to consider whether the harm was physical or merely economic, whether the conduct was an isolated incident, and whether it resulted from intentional malice or mere accident. *Id.* at 419. Where, as here, the harm is purely economic, the conduct is alleged to have occurred in a single isolated transaction, and there is no allegation of physical harm, reckless endangerment, or deliberate concealment, the reprehensibility calculus weighs heavily against any substantial punitive award.

Plaintiff's demanded ratio is not close to the single-digit guideline. His actual damages are $7,820. His punitive demand of $200,000 produces a ratio of more than 25 to 1, a ratio the Supreme Court has made plain is constitutionally suspect. *State Farm*, 538 U.S. at 425. This Court applied that principle directly in *Sullivan v. JP Morgan Chase Bank*, No. CV-16-02608-PHX-DJH, 2017 WL 3050995 (D. Ariz. Jan. 10, 2017), where a pro se plaintiff who sought punitive damages of over $10 million on compensatory

SILENCE LAW GROUP

damages of approximately $12,620 arising from a disputed credit card charge, a small consumer transaction yielding purely economic harm. This Court found that such an award would not be recoverable because it would violate due process under *State Farm* and dismissed for lack of subject matter jurisdiction. *Id.* at *4. This parallels the case before the Court. Here, Plaintiff seeks a punitive-adjacent award far beyond constitutional limits with a claim involving no physical harm and no allegation of systemic or intentional misconduct.

The mere possibility that punitive damages could be awarded in some amount does not suffice to carry the amount in controversy. As explained in *Burk v. Medical Savings Insurance Co.*, a plaintiff must demonstrate not just that punitive damages are available as a matter of law, but that they will more likely than not exceed the amount needed to bridge the jurisdictional gap. 348 F.Supp.2d 1063, 1069 (D. Ariz. 2004). Asserting that a complaint seeks punitive damages and that such damages could theoretically be large "is insufficient to establish that it is more likely than not that a potential punitive damage award will increase the amount in controversy above $75,000." *Id.* Plaintiff here has done nothing more than attach an inflated number to a self-created instrument and call it damages. That is insufficient under *Burk*, and the resulting award would be unconstitutional under *State Farm* and *Sullivan* in any event.

Arizona courts have gone further, establishing that a 1:1 ratio between punitive and compensatory damages represents the presumptive ceiling. In *Smith v. Olsen*, 257 Ariz. 518 (App. 2024), the Arizona Court of Appeals reduced punitive damages to a 1:1 ratio in a case involving a multi-year campaign of intentional harassment by a neighbor that included repeatedly attempting to run the plaintiff off the road with a vehicle, trespassing onto her property, poisoning her dog, placing rattlesnakes near her home, violating court-issued injunctions against harassment, and engaging in years of targeted intimidation. *Id.* at 531–33. Even with that degree of intentional, repetitive, physically threatening conduct, the court held that a 2.67:1 ratio on one claim and a 3:1 ratio on two others were constitutionally excessive and reduced all three to 1:1. *Id.* The court explained that a 1:1

ratio may represent the outermost limit the Due Process Clause will tolerate, consistent with the *State Farm* guidance. *Id.* at 532 (quoting *State Farm*, 538 U.S. at 425).

This Court lacks subject matter jurisdiction to enter a default or continue litigation in this forum. The case must be dismissed.

### III.    PLAINTIFF STILL HAS NOT ESTABLISHED VALID SERVICE

Plaintiff's own words defeat his service argument. He states that he "hired a third-party professional process server" who "made three separate attempts to personally serve Defendants at the corporate headquarters." (Resp. ¶ 3.) But in the very next paragraph, he concedes that "the subject corporate address of Defendants is a mailbox." (Resp. ¶ 4.) He does not state that personal service was ever completed. He provides no affidavit from the process server describing what occurred. He does not identify the process server by name. He does not describe what happened on January 30, 2026, that he claims constituted valid service.

Under Federal Rule of Civil Procedure 4(h), a corporation must be served by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service. Leaving documents at a mailbox or mailing them does not satisfy Rule 4(h). Three failed attempts at personal service do not become valid service simply because the process server stopped trying. Plaintiff's argument on this point should be disregarded.

### IV.    DEFENDANTS DID NOT "WAIT TWO MONTHS" TO RESPOND

Plaintiff claims that "Defendants waited for two whole months after service was already properly effected on Defendants to respond to Plaintiff's Complaint." (Resp. ¶ 6.) This argument assumes that service was properly effected on January 30, 2026. As set forth in Section III, it was not. Defendants were waiting for Plaintiff to properly serve them. He never did.

Even setting aside the service dispute, Plaintiff's characterization is misleading. Counsel was retained on February 5, 2026. Between that date and the filing of Defendants' Motion, the Magistrate Judge issued a Report and Recommendation identifying the same

SILENCE LAW GROUP

jurisdictional and service deficiencies that Defendants' Motion addresses. Defendants then filed a comprehensive motion raising meritorious defenses on multiple grounds. Plaintiff ignores this procedural context entirely and instead frames reasonable preparation time as neglect.

The timeline also undercuts Plaintiff's argument. Plaintiff concedes his initial service was defective and that the Court vacated the first entries of default for that reason. He claims service was perfected on January 30, 2026, yet filed his application for entry of default on February 20, 2026, just 21 days later, at the earliest possible moment. Rather than allow Defendants a meaningful opportunity to respond, Plaintiff rushed to obtain a default the moment the clock arguably permitted it, where service was directed to a mailbox rather than personally served on any officer, managing agent, or registered agent of the corporate Defendant.

But even if this Court were to find that Defendants' response was untimely, that finding would not cure the jurisdictional defect. Subject matter jurisdiction cannot be created by consent, waiver, or default. If this Court lacks jurisdiction under 28 U.S.C. § 1332 because the amount in controversy falls below $75,000, as Defendants contend and as Plaintiff's own Complaint supports, the Court must dismiss this action regardless of whether Defendants responded in 21 days, two months, or two years.

## V.    CONCLUSION

Plaintiff's Response fails to establish valid service, does not demonstrate subject matter jurisdiction, does not articulate a viable legal theory, raises claims and damage figures never pled, and was itself improperly served. Defendants respectfully request that the Court grant the Motion to Vacate the Clerk's Entries of Default and dismiss this action.

DATED this 9th day of April, 2026.

10

**Silence Law Group**

*/s/ David Nowakowski*
David Nowakowski
Jesse R. Ritchey
Jeffrey Silence

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing. Because Plaintiff is a pro se litigant who is not a registered CM/ECF participant, I further certify that a copy of the foregoing was served on Plaintiff by first-class mail, postage prepaid, addressed to:

Blake Lynch
803 E. Centre Avenue
Buckeye, Arizona 85326

*/s/ David Nowakowski*

SILENCE LAW GROUP