**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Blake Lynch,

          Plaintiff,

v.

Joseph Shrem, et al.,

          Defendants.

No. CV-25-04481-PHX-DJH

**ORDER**

On January 8, 2026, *pro se* Plaintiff Blake Lynch ("Plaintiff") filed a Motion for Default Judgment (Doc. 11) against Defendants Select Home Warranty LLC ("Select Home"), Joseph Shrem ("Shrem"), and David Moradi ("Moradi") (collectively, "Defendants"). United States Magistrate Judge Camille D. Bibles (the "MJ") issued a Report and Recommendation ("R&R") (Doc. 17) on Plaintiff's Motion, recommending its denial. Plaintiff filed an Objection (Doc. 18) to the R&R. However, before any action could be taken on either the Objection or the R&R, Plaintiff filed affidavits of service on all three Defendants (Docs. 19–23). After applying and obtaining entry of default against Defendants on February 24, 2026, Plaintiff then filed two Motions for Default Judgment against Defendants, one on March 4, 2026 (Doc. 26), and another on March 5, 2026 (Doc. 27).

Defendants Moradi and Select Home have since appeared and moved to vacate the Clerk's Entries of Default against them and to dismiss this matter for lack of subject matter jurisdiction and for insufficient service of process (Doc. 29). Plaintiff filed a Response in

Opposition (Doc. 30), and Moradi and Select Home thereafter filed a Reply (Doc. 31).

## I.    Background

The factual allegations underpinning Plaintiff's Complaint are rather succinct. In June of 2024, Plaintiff purchased a home warranty policy from Select Home. (Doc. 1 at 4). After the policy went into effect in July 2024, Plaintiff alleges that he filed a claim with Select Home regarding his air conditioning issues. (*Id.*) However, he claims that Select Home "refused to send a technician to diagnose and resolve" the issues. (*Id.*) Therefore, Plaintiff had to pay $7,820.00 "out-of-pocket for a brand-new air conditioner" to "third-party air conditioner technicians." (*Id.* at 4, 14).

Plaintiff asserts that his attempts to conduct arbitration on the matter were unsuccessful and that "Defendants Joseph Sherm and David Moradi have completely ignored Plaintiff's multiple requests to settle." (*Id.* at 4). Plaintiff "assume[s] Defendants Joseph Shrem and David Moradi are using Defendant Select Home Warranty LLC for the purpose of fraud against consumers." (*Id.*) Although not specifically alleged in the Complaint, the attachments identify Defendant Moradi as the Chief Operations Officer of Select Home. (*See id.* at 50, 59). Defendant Sherm's role in this matter is not specified, but it can be presumed that he was somehow employed by Select Homes. The Complaint indicates that it is bringing claims for "[Defendants'] acts of Contractual Fraud, Fraudulent Inducement to Contract, Neglect, their Violations of the Magnus-Moss Warranty Act, their violations of the terms and conditions under Contract and for further damages deemed necessary by the Court." (*Id.* at 14). Plaintiff now seeks "compensatory and punitive damages" against Defendants in the amount of $300,000.00. (*Id.* at 4).

## II.    Procedural History

Plaintiff's Complaint was filed on December 4, 2025. On December 8, 2025, Plaintiff filed a "Certificate of Service" (Doc. 6) stating that Plaintiff mailed copies of the Summons and Complaint to Defendants on December 4, 2025. (*See id.*). Defendants did not appear, and Plaintiff filed his initial Motion for Default Judgment (Doc. 11) on January 8, 2026. The Court referred the Motion to the MJ for a report in recommendation.

On January 26, 2026, the MJ recommended denying the Motion, reasoning, in large part that:

> Plaintiff failed to serve the Defendants in a manner consistent with Rule 4 of the Federal Rules of Civil Procedure. Rule 4(b)(c)(2) provides that service on an individual or corporate defendant must be effected by someone other than a party to the action, and pursuant to Rule 4(h) service on a corporation may not be made by mail. In the absence of proper service of process, the Court has no power to render any judgment against the Defendants. *See Ross*, 504 F.3d at 1138-39.
>
> Moreover, on January 8, 2026, at the time that he moved for judgment by default in this matter, Plaintiff was aware that service by mail was not valid and that any entry of default against a defendant served by Plaintiff by mail could be vacated for want of proper service. *See Lynch v. American Express*, 2:25-cv-04671, at ECF No. 7 (D. Ariz. Jan. 6, 2026); *Lynch v. Navy Fed. Credit Union*, 2:25-cv-4883, at ECF No. 10 (D. Ariz. Jan. 5, 2026).

(Doc. 17 at 4).

Plaintiff filed an Objection to the R&R on February 4, 2026, noting therein that "Plaintiff admits his error in seeking a Default Judgment in this case for his failure to have Defendants properly served pursuant to Rule 4 of the Federal Rules of Civil Procedure. . . For this error alone, Plaintiff understands this Court's reasoning as to denying Plaintiff's Motion for Default Judgment and going so far as to vacate the Clerk's entry of default against Defendants. Plaintiff has properly served Defendants pursuant to Rule 4 of the FRCP on January 29, 2026 and is prepared to proceed forthwith." (Doc. 18 at 2). Rather than wait for resolution of his Objection, Plaintiff filed five subsequent Affidavits of Service. (*See* Docs. 19–23). Each of these Affidavits indicate that a process server mailed documents, including the Complaint and Summons, to Defendants. (*See id.*). After Defendants did not appear, Plaintiff filed a Motion for Default Judgment on March 4, 2026, then inexplicably filed another Motion for Default Judgment on March 5, 2026. (Docs. 26–27). Defendants Select Home and Moradi appeared on March 30, 2026 and now move to vacate the defaults and dismiss this case.

## III.    Plaintiffs' Motions for Default Judgment

At the outset, the Court finds that, by filing successive motions requesting the same

- 3 -

relief, Plaintiff has mooted his January 8 and March 4 Motions for Default Judgment (Docs. 11, 26) and therefore these Motions are denied.  Although the MJ expended its judicial resources   on the R&R, and the Court agrees with her conclusions, Plaintiff's repetitive Motions have likewise mooted the R&R and Plaintiff's Objection to it.  (Docs. 17–18).

To determine the viability of Plaintiff's final Motion for Default Judgment (Doc. 27), the Court will now turn to Defendants' Motion to Vacate.

**IV.    Defendants' Motion to Vacate Entries of Default**

Federal Rule of Civil Procedure 55(c) gives a district court the discretion to set aside entry of default upon a showing of good cause.  Fed. R. Civ. P. 55(c).  The "good cause" analysis considers three factors: "(1) whether [defendant] engaged in culpable conduct that led to the default; (2) whether [defendant] had a meritorious defense; or (3) whether reopening the [action] would prejudice [plaintiff]." *Fran. Holding II, LLC. v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004).

Defendants first argue that they did not engage in any culpable conduct leading to the default as they were not properly served.  (Doc. 29 at 4–5).  Plaintiff asserts that there is no good cause shown because Defendants' counsel "admits they were retained within a week after service was effected on their clients."  (Doc. 30 at 3).[1]  Upon review of the Affidavits, the Court agrees with Defendants that service was not proper.

First, as to the service rendered upon Select Home, Plaintiff's Affidavit of Mailing states that a process server mailed the Complaint and Summons to Select Home at 1000 Wyckoff Avenue Third Floor, Mahwah, NJ 07430.  (Doc. 23).  It also includes a scanned document that shows an illegible signature and the aforementioned address.  (*Id.* at 2). Rule 4(h) states that a domestic corporation, partnership, or association must be served:

[B]y delivering a copy of the summons and of the complaint to an officer, a

---

[1] Plaintiff also claims, in his Response, that a process server effectuated personal service on all Defendants.  (Doc. 30 at 2).  However, each Affidavit filed by Plaintiff is an "Affidavit of Mailing" and indicates that a process server mailed documents to an New Jersey address. (*See* Docs. 19–23).  Because the Court has no evidence of personal service on any Defendant, the Court disregards Plaintiff's claims regarding personal service.

> managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant[.]

Fed. R. Civ. P. 4(h).  Of course, Rule 4(e)(1) allows for service to be executed by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).  The relevant Arizona Rule similarly provides:

> If a corporation, partnership, or other unincorporated association is located outside Arizona but within the United States, it may be served by delivering a copy of the summons and the pleading being served to a partner, an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant.

Ariz. R. Civ. P. 4.2(h).

The Affidavit by Plaintiff meets none of the requirements under either the Federal or Arizona Rule.  There is no indication that Plaintiff completed service on anyone in a position to accept service on behalf of Select Home, and, crucially, neither Rule provides for service by mail.  (*See* Doc. 23).  Therefore, service upon Defendant Select Home was improper.

Next, the Court finds that service on the individual Defendants was also improper. To be sure, Arizona's Rule 4.2(c)(1) allows a party to serve a person known to reside outside of Arizona but within the United States "by mailing the summons and a copy of the pleading being served to the person at that address by any form of postage-prepaid mail that requires a signed and returned receipt." Ariz. R. Civ. P. 4.2(c)(1).  However, the Rule further requires that the serving party must file an affidavit stating: "the person being served is known to be located outside Arizona but within the United States;" "the serving party mailed the summons and a copy of the pleading or other request for relief to the person by any form of mail described in Rule 4.2(c)(1);" "the serving party received a signed return receipt, which is attached to the affidavit and which indicates that the person

received the described documents;" and "the date of receipt by the person being served." Ariz. R. Civ. P. 4.2(c)(2).

As to Defendant Moradi, there is no signed return receipt, so service was deficient. (*See* Doc. 19). As to Defendant Sherm, the Affidavit does not include all of the above requirements, and, importantly, the attached signed document contains a singular name that, by the Court's best assessment, is "Regis." (*See* Doc. 22 at 2). Although neither the printed name nor signature is abundantly clear, the name listed is certainly not "Joseph Sherm." (*See id.*). There is no indication who the signing party is or if they are in any way connected to Defendant Sherm. *Fannie Mae v. Ungo*, 2024 WL 248692, at *3 (Ariz. Ct. App. 2024) ("[N]othing in this record suggests "C. Chris" had an agency relationship with [the defendant] or that [the defendant] had authorized "C. Chris" to accept or sign for mail on his behalf. Therefore, [the plaintiff's] affidavit of service did not meet the requirements of Rule 4.2(c)."). Thus, Plaintiff's Affidavit regarding Defendant Sherm also did not meet the requirements of Rule 4.2(c), and service was improper.[2]

"Failure to properly serve a defendant with process pursuant to Fed. R. Civ. P. 4 constitutes good cause to set aside an entry of default." *Ewing v. Auto Transp. Groupe, Inc.*, 2021 WL 12181319, at *2 (S.D. Cal. 2021); *Perciballi v. Ng*, 2010 WL 11595731, at *2 (C.D. Cal. 2010) ("The Ninth Circuit has recognized that the failure to properly serve a defendant is a valid basis for setting aside entry of default.") (citing *Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 202 (9th Cir. 1988)). Further, Plaintiff's argument that Defendants retained counsel is unavailing. Even assuming Defendants had actual notice of this case, such notice "do[es] not excuse Plaintiff from his obligation to serve Defendant[s] with process." *Encinas v. U. of Wash.*, 2022 WL 4598083, at *4 (W.D. Wash. 2022).

The Court finds that the lack of proper service upon Defendants is reason enough to

---

[2] The Court recognizes that Defendants' Motion was only brought on behalf of Defendants Select Home and Moradi. However, "[w]here good cause exists, a district court has the authority to set aside an entry of default sua sponte." *Safeco Ins. Co. of Am. v. Pederson*, 2025 WL 711185, at *1 (E.D. Cal. 2025); *Investcorp Ret. Spec., Inc. v. Ohno*, 2007 WL 2462122, at *2 (N.D. Cal. 2007) ("The court may set aside entries of default *sua sponte*.").

set aside the defaults.  However, briefly, Defendants have identified meritorious defenses in this action (*see* Doc. 29 at 5–6), and, because this case is only several months old and no discovery has occurred, setting aside default will not prejudice Plaintiff.  *See*, *e.g.*, *Alves v. Emerald Corr. Mgmt. LLC*, 2011 WL 13146442, at *1 (D. Ariz. 2011) ("Given the early stage of this litigation, plaintiff will not be prejudiced by setting aside the default.").  Thus, the Court will vacate the entries of default as to each Defendant.

Moreover, because the entries of default are vacated, the Court denies Plaintiff's Motion for Default Judgment as moot.  *See*, *e.g.*, *Vapor Spot, LLC v. Breathe Vape Spot, Inc.*, 2016 WL 7042107, at *4 (C.D. Cal. 2016) ("In light of the Court's granting of Defendant's motion to set aside the default, default judgment is no longer proper.  The Court thus renders [the default judgment] motion moot.").

## V.    Defendants' Motion to Dismiss

Defendants also argue that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction.  (Doc. 29 at 6–8).  Defendants claim that Plaintiff has failed to establish the amount in controversy requirement because the only plausible damages Plaintiff alleges falls far short of the $75,000 minimum.  (*Id.*)  Plaintiff disagrees, maintaining that his "Certificate of Dishonor" was legitimate.  (*See* Doc. 30 at 4).

### A.    Legal Standard

In civil cases, federal courts have subject matter jurisdiction over only those cases where either diversity jurisdiction or federal question jurisdiction exist.  *See Peralta v. Hispanic Bus., Inc.*, 419 F.3d 1064, 1068 (9th Cir. 2005).  Federal question jurisdiction exists where the action arises under federal law.  28 U.S.C. § 1331.  Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the case is between citizens of different states, or citizens of a state and citizens or subjects of a foreign state.  28 U.S.C. § 1332(a)(2).  In diversity cases, the general rule is that the amount claimed by a plaintiff in their complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount.  *Saint Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). A jurisdictional attack can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Facial attacks assert that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* With a factual attack, a court may review evidence beyond the complaint without converting the motion into one for summary judgment, and it "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff must show that the court in question has jurisdiction to hear their case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must dismiss a plaintiff's complaint if it fails to establish subject matter jurisdiction. *Savage*, 343 F.3d at 1039 n.2.

**B.    Discussion**

To justify dismissal for failure to adequately allege the $75,000 amount in controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Budget Rent-A-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "A claim in excess of the requisite amount, made in good faith in the complaint, satisfies the jurisdictional requirement." *Id.* However, the suit cannot involve the necessary amount "when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986).

In an Affidavit filed with his Complaint, Plaintiff states that he "was forced to pay the full price of the $7,820.00 to Big O Air Conditioning," to restore air conditioning to his home after Defendant denied his claim. (Doc. 1 at 14). Otherwise, Plaintiff's claimed damages are substantiated by Defendant's failure to respond to a $100,000 invoice sent by Plaintiff and punitive damages. (*See id.* at 14, 59).

First, Plaintiff's invoice and following Certificates of Dishonor are legally baseless. Based on the documents filed by Plaintiff, on October 8, 2025, Plaintiff sent Defendant Moradi a "Presentment and Invoice." (*See id.* at 59). In this document, Plaintiff states that he had to pay $7,820.00 on a new air conditioner; he then asserts that "[Plaintiff is] now invoicing you and your company for $100,000 for both actual and punitive damages[.]" (*Id.*) Plaintiff further stated that "[p]ayment in the amount of One Hundred Thousand Dollars and 00/100 ($100,000.00) shall come due within (15) calendar days of your receipt of this presentment and invoice. Select Home's failure to accept and pay the attached invoice upon receipt and within (15) calendar days will be considered a refusal." (*Id.*)

Plaintiff then sent Defendants a "Notice of Dishonor" on November 5, 2025, and a Notice of Protest and Opportunity to Cure" on November 15, 2025, both citing U.C.C. § 3-505(a). (*Id.* at 7–8). He finally sent Defendants a "Notary Certificate of Dishonor," citing UCC § 3-505(a) and A.R.S. § 47-3505(B), on November 26, 2025. (*Id.* at 6). All of these documents note Defendants' non-payment of the invoice, and the final Notary Certificate claims that Defendants are now liable for three times the initial $100,000 request. (*Id.*) Plaintiff then brought this case in attempt to enforce these "instruments."

Plaintiff's Invoice and various Notices hold no weight. The UCC § 3-505(a) and A.R.S. § 47-3505(B) apply to negotiable instruments, and Plaintiff's home warranty policy is not a negotiable instrument. *See* A.R.S. § 47-3104 (defining negotiable instrument); UCC § 3-104 cmt. 2 ("Article 3 is not meant to apply to contracts for the sale of goods or services or the sale or lease of real property or similar writings that may contain a promise to pay money."). Plaintiff cites *Watson v. Tarpley*, 59 U.S. 517 (1855) to support his claim. However, this 1855 case involved a bill of exchange, which is a negotiable instrument, so the case is inapplicable to Plaintiff's situation. Not to mention, "[p]eople who identify as sovereign citizens use maneuvers like the notary presentment to avoid paying debts or to collect debts that are not actually owed." *Balash-Ioannidou v. Contour Mortgage Corp.*, 2022 WL 3358082, at *2 (E.D.N.Y. 2022). Plaintiff seems to be employing this strategy in the present case as well as others brought in this District. *See*, *e.g.*, *Lynch, v. American*

*Express*, 2026 WL 1303981, at *2 (D. Ariz. 2026) ("Lynch's theories involving notarial protest and the UCC indicate he may be asserting some sort of 'sovereign citizen' claim.") (internal quotation marks and citation omitted).  Therefore, any claimed damages based on these "notarial protests" are disregarded as frivolous.

Moreover, Plaintiff's claim for punitive damages is insufficient to establish the amount in controversy.  Under Arizona law, "[p]unitive damages cannot be awarded for breach of contract." *McClure v. State Farm Life Ins. Co.*, 608 F. Supp. 3d 813, 825 (D. Ariz. 2022).  This premise applies equally to breach of warranty claims.  *See Jones v. General Motors Corp.*, 2009 WL 648613, at *2 (D. Ariz. 2009).  The Complaint does not establish any of the elements of a tort claim, much less provide h the level of specificity required to bring a claim based in fraud.  *See* Fed. R. Civ. P. 9.  While Plaintiff references fraud, the elements of a fraud claim are not pled nor are they discernible on the face of the Complaint.  (*See generally* Doc. 1).  "[B]ecause Plaintiff has not adequately pleaded a tort against [Defendants], [Defendants] cannot be subject to punitive damages." *Kubli v. AmTrust Ins. Co. of Kansas*, 2019 WL 13196105, at *6 (D. Ariz. 2019) (citing *Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1277 (Ariz. Ct. App. 2001)).  "If Plaintiff cannot recover punitive damages on the relevant claims, Plaintiff cannot meet the amount in controversy requirement for the exercise of federal jurisdiction." *Jones*, 2009 WL 648613, at *2.

Lastly, although the elements of such a claim are not explicitly alleged, the Court notes that Plaintiff's Complaint indicates that he is bringing a claim under the Magnuson-Moss Warranty Act.[3]  Bringing a claim under a federal statute normally establishes federal question jurisdiction; however, Plaintiff's damages here do not meet the jurisdictional limit set forth in the Act.  In order to file a claim in a federal district court under the Magnuson-Moss Warranty Act, the amount in controversy must be at least $50,000.  *See* 15 U.S.C. § 2310(d)(3)(B).  If the amount of controversy is less than $50,000, the plaintiff must instead

---

[3] Defendants do not address the mention of the Magnuson-Moss Warranty Act in the Complaint.  However, as the $50,000 amount is required to establish federal jurisdiction, the Court may raise the issue *sua sponte*.  *See Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

file its Magnuson-Moss Warranty Act claim in any State or in the District of Columbia. 15 U.S.C. §§ 2310(d)(1)(A)–(B), 2310(d)(3)(B). For the purposes of the Magnuson-Moss Warranty Act, the amount in controversy excludes interests and costs and is "computed on the basis of all claims to be determined in this suit." *Id.* at § 2310(d)(3)(B). As established above, Plaintiff has at most reasonably alleged damages in the amount of $7,820. Therefore, Plaintiff has not established federal question jurisdiction under the Magnuson-Moss Warranty Act.

In sum, Plaintiff has failed to establish the amount in controversy required for diversity jurisdiction or to bring a claim in federal court under the Magnuson-Moss Warranty Act. Consequently, the Court is without jurisdiction and dismisses this action.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motions for Default Judgment (Docs. 11, 26, 27), the MJ's Report and Recommendation (Doc. 17), and Plaintiff's Objection to the Report and Recommendation (Doc. 18) are **DENIED as moot**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Vacate Clerk's Entries of Default, to Dismiss for Lack of Subject Matter Jurisdiction, and to Dismiss for Insufficient Service of Process (Doc. 29) is **GRANTED**. The Entries of Default as to Defendants Sherm, Moradi, and Select Home are **VACATED**. This case is **DISMISSED** for lack of subject matter jurisdiction.

**IT IS FINALLY ORDERED** that the Clerk of Court is kindly directed to enter judgment in accordance with this Order and close this matter.

Dated this 26th day of May, 2026.

Honorable Diane J. Humetewa
United States District Judge